Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone:  (424) 500-8552

Proposed Attorneys for Fu Bang
Group Corp, USA, Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No. 6:25-bk-13642-SY |
| DOS LAGOS CENTER 2, LLC, | Chapter 11 |
| Debtor and<br>Debtor in Possession. | **MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO RETAIN FORCE TEN PARTNERS, LLC TO PROVIDE NICHOLAS RUBIN AS CHIEF RESTRUCTURING OFFICER AND RESTRUCTURING ADVISOR PERSONNEL, AS NECESSARY, EFFECTIVE AS OF THE PETITION DATE; (II) APPROVING THE RETENTION AGREEMENT; AND (III) GRANTING RELATED RELIEF; DECLARATIONS OF NICHOLAS RUBIN AND BO DON IN SUPPORT THEREOF**<br><br>[No Hearing Set Pursuant to Local Bankruptcy Rules 2014-1(b) and 9013-1(o)] |

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-1-
MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

Dos Lagos Center 2, LLC (the "Debtor" or "DLC2"), the above-captioned chapter 11 debtor and debtor-in-possession, hereby submits this *Motion for Entry of an Order (I) Authorizing the Debtor to Retain Force Ten Partners, LLC to Provide Nicholas Rubin as Chief Restructuring Officer and Restructuring Advisor Personnel, as Necessary, Effective as of the Petition Date; (II) Approving the Retention Agreement; and (III) Granting Related Relief* (the "Motion"). A copy of the terms and conditions of the agreement between the Debtor and Force Ten Partners, LLC ("Force Ten"), dated July 8, 2025 (the "Retention Agreement"), to provide the Debtor with Nicholas Rubin ("Mr. Rubin") as the Debtor's Chief Restructuring Officer ("CRO") and additional Force Ten restructuring advisory personnel to support the CRO and the Debtor (the "Restructuring Advisor Personnel") is attached hereto as **Exhibit 1**. A proposed form of order granting the relief requested herein (the "Proposed Order") is attached hereto as **Exhibit 2**.

In support of this Motion, the Debtor submits the following memorandum of points and authorities and the attached declarations of Mr. Rubin (the "Rubin Declaration") and Bo Don (the "Don Declaration").

## I.   INTRODUCTION

### A.   The Bankruptcy Case Background

On May 30, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to carry out its business operations and manage its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in the Bankruptcy Case.

### B.   The Debtor's Business

DLC2 owns a parcel of real property (APN 279-460-063, the "Property") in Corona, California, on which a hotel was planned to be built. DLC2 is an affiliate of Fu Bang Group Corp, USA ("Fu Bang"), which is a debtor in a chapter 11 bankruptcy case pending before this Court (Case No. 6:25-bk-13004-SY). Fu Bang owns an adjacent property located at 2798 Troy Court, Corona, CA 92883, which was planned to house 94 residential housing units and a common area swimming pool. The intention of DLC2 and Fu Bang was to develop the two properties to create a "live work play" commercial and residential development known as "Dos Lagos."

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Regarding the Fu Bang property, at present, 51 of the 94 planned units have been constructed.  Due to a *lis pendens* on the property, Fu Bang was not able to sell condo units as originally intended. At present, 36 units are rented to third parties at various market rates, 8 units are rented to EB5 investors for nominal rates, and one unit is provided rent-free to a religious organization for use as a temple. Four units are vacant and available for rent. One unit is used by Fu Bang as an office and one unit is a community center. At this time, the condo map has expired and would need to be renewed in order for units to be sold individually. The phase 3 development site on the Fu Bang property is intended for 43 additional condo units. Concrete slabs have been laid down for this development along with utilities stubbed to the site. The Fu Bang property has recently been appraised at $24 million. Facing foreclosure by two secured lenders, First Credit Bank and Sparknest, LLC, Fu Bang filed a chapter 11 bankruptcy case on May 7, 2025.  DLC2, also facing foreclosure of its Property by First Credit Bank, filed this Bankruptcy Case soon after, on May 30, 2025.

## II.      THE PROPOSED RETENTION OF MR. RUBIN AND FORCE TEN

### A.      Services to be Provided [1]

As set forth in the Retention Agreement attached hereto as **Exhibit 1**, Force Ten has provided the Debtor with Mr. Rubin as the Debtor's CRO and the Restructuring Advisor Personnel to provide the services set forth in the Retention Agreement.  The Debtor seeks the Court's authorization to retain Mr. Rubin as the Debtor's CRO and the Restructuring Advisor Personnel, on the same terms as set forth in the Retention Agreement, during this case, effective as of June 8, 2025.

The duties of the CRO and the Restructuring Advisor Personnel are proposed to be, without limitation:

Executive Services:

(a)      manage the Debtor's restructuring efforts;

---

[1]      The description of the services to be provided herein is a summary.  The full description of the services is provided in the Retention Agreement.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

(b)     manage the Debtor's efforts to reorganize their assets and liabilities for the benefit of their respective stakeholders, including, without limitation, authorizing the CRO to administer and carry out the Debtor's duties as a debtor-in-possession;

(c)     manage a sale process to sell the Company's assets under section 363 of the Bankruptcy Code, as applicable;

(d)     manage the Debtor's efforts to confirm a plan of reorganization or liquidation, as applicable, pursuant to the Bankruptcy Code.

Restructuring Services:

(a)     Managing the restructuring affairs of the Debtor, supervising the Debtor's professionals;

(b)     Assisting legal counsel and the Debtor's other professionals in executing the Debtor's restructuring efforts;

(c)     Assisting in connection with motions, responses, or other court activity as directed by legal counsel;

(d)     Evaluating and developing restructuring plans and other strategic alternatives for maximizing the value of the Debtor and its assets and recommending to the CEO and Board of Directors various plans and strategic alternatives from time to time, and upon receipt of board approval of a proposed course of action, using commercially reasonable efforts to attempt to implement such course of action, subject to, as applicable, approval of any court of competent jurisdiction;

(e)     Assisting in negotiations with the Debtor's creditors and the Debtor's efforts to manage accounts payable and accounts receivable;

(f)     Preparing declarations, reports, depositions, and testimony; and

(g)     Represent the Debtor, as an authorized representative, in any and all bankruptcy court or related proceedings.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Additionally, the CRO expects to:

(a)   Participate in meetings and provide support to the Debtor and its professionals in responding to information requests, communicating with creditors, official committees of unsecured creditors (if one is appointed), the Office of the United States Trustee for the Central District of California (the "U.S. Trustee"), other parties in interest, and professionals hired by the same;

(b)   Advise the CEO of the development, negotiation, and implementation of restructuring initiatives and evaluation of strategic alternatives;

(c)   Prepare information and analysis necessary for the confirmation of a plan of reorganization, including information contained in the disclosure statement such as a liquidation analysis, if applicable;

(d)   Assist in implementing a chapter 11 plan of reorganization, if applicable;

(e)   Render testimony, as requested, about the matters regarding which Force Ten and its personnel are providing services; and

(f)   Provide such other restructuring or advisory services as are consistent with the role of the CRO and/or the above-described services, requested by the Debtor or counsel to the Debtor, that are not duplicative of services provided by other professionals, and as agreed by Force Ten.

Force Ten will not accept employment in any other capacity in the case (i.e., financial advisor to the Debtor). Force Ten is not being engaged as a financial advisor and will not provide outside of the scope set forth herein and in the Retention Agreement.

For a period of three years after the conclusion of the engagement, it will not make any investments in the Debtor or reorganized debtor.

**B.   Reporting and Authority**

The CRO shall provide periodic reports to the Board. The CRO shall act under the direction, control, and guidance of the Board and shall serve at the Board's pleasure. However, the CRO shall

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

have broad discretion to implement or undertake, as the case may be, the Executive Services and Restructuring Services without the need to seek specific approval from the Board.

### C. Modifications

No material modifications to the terms of Force Ten's engagement shall be effective without approval by the Bankruptcy Court.

### D. Professional Compensation

As set forth in the Retention Agreement, the hourly billing rates for restructuring professionals assigned to this engagement by Force Ten are as follows:

| PROFESSIONAL | RATE RANGE |
|---|---|
| CRO | $950 |
| Partners | $850 to $990 |
| Managing Directors | $495 to $795 |
| Directors | $425 to $595 |
| Analysts | $255 to $495 |

Mr. Rubin has agreed to a discounted hourly rate of $850 for this engagement. Such rates shall be subject to Force Ten's customary annual adjustments. Notice of any such adjustment shall be given to the Debtor reasonably in advance of its effectiveness. Force Ten may add or substitute personnel during the course of this case, in which case the substituted personnel will be billed at Force Ten's customary hourly rates. In addition to compensation for services rendered by Force Ten's professionals, Force Ten will seek reimbursement for reasonable and necessary expenses incurred in connection with this case, including, but not limited to travel, lodging, postage, telephone, document reproduction, computer charges, and database access fees. All fees and expenses will be billed on a monthly basis.[2]

---

[2] Despite meals being included as an allowable expense in the Retention Agreement, meals will not be an allowable expense.

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

The Debtor believes, as does Force Ten, that the foregoing fee structure is reasonable, market-based, and designed to fairly compensate Force Ten for its work and to cover necessary and reasonable expenses. To be clear, such determination of reasonableness is not binding on any party other than the Debtor. Other than as set forth herein or in the Retention Agreement, there is no proposed arrangement between the Debtor and Force Ten for compensation to be paid in this case.

### E. Reporting Requirements

Upon Court approval of the relief requested herein, Force Ten will be employed pursuant to section 363 of the Bankruptcy Code. Because Force Ten is not being employed as a professional under section 327 of the Bankruptcy Code, Force Ten shall not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, the fees and expenses incurred by Force Ten will be treated as administrative expenses of the Debtor's estate.

To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code (sometimes referred to as the "J. Alix Protocol"), Force Ten will file with the Court and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed (collectively, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month. These Staffing Reports will include the names and tasks performed by all Restructuring Advisor Personnel involved in this matter. Notice for the Staffing Reports will provide for a time period of fourteen (14) days for objections by parties in interest. The Staffing Reports (and Force Ten's staffing for this matter) will be subject to review by the Court in the event so requested by any of the Notice Parties.

### F. No Duplication of Services

Force Ten is aware that the Debtor seeks to retain Weintraub Zolkin Talerico & Selth LLP ("WZTS") and that the Debtor may retain additional professionals during the term of the engagement. Force Ten will work cooperatively with, and not duplicate the services of, the other professionals to integrate any respective work performed by Force Ten on behalf of the Debtor with the work performed by the other professionals. Force Ten will utilize the Debtor's personnel or experienced third parties familiar with the Debtor's operations (subject to court approval or

-7-
MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

employment as may be necessary) to the greatest extent possible in order to limit its hourly fees.

### G.    Indemnification and Limitation of Liability

The Retention Agreement contains an indemnification provision that requires that the Debtor indemnify and hold harmless Force Ten and each of its personnel, including the CRO, together with its officers, members, partners, directors, employees and agents (each an "Indemnified Party"), from and against any losses, claims, damages and liabilities, joint or several, to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any services contemplated by Force Ten's engagement with the Debtor. Notwithstanding the broad language in the Retention Agreement, Force Ten will agree to limit the extent of its indemnification to the same extent as set forth in the Debtor's current bylaws, which the Debtor believes is appropriate given that Mr. Rubin is serving as the Debtor's chief restructuring officer.  Despite anything in the Retention Agreement to the contrary, Force 10 agrees that should any of its personnel be in breach of or default under this Retention Agreement, the maximum liability of Force 10 and such personnel with respect to such breach or default shall not be limited to the fees actually paid to Force 10 pursuant to the Retention Agreement.

### III.    THE QUALIFICATIONS OF MR. RUBIN AND FORCE TEN

The Debtor is familiar with the professional standing and excellent reputation of Force Ten, Mr. Rubin and the Restructuring Advisor Personnel, and Force Ten is well-qualified to provide the services as outlined in the Retention Agreement and this Motion in light of, among other things, their extensive knowledge and expertise with respect to chapter 11 proceedings.

Force Ten has extensive experience in providing CRO services and serving as a financial advisor to debtors, creditors, trustees, official creditors' committees, and others in a wide variety of bankruptcy matters, including acting as CRO, independent director, or financial advisor to the debtors or the trustee in the bankruptcy proceedings of Rubio's Coastal Grill, BurgerFi International, Litigation Practice Group, Corner Bakery, Tuesday Morning Corporation, Thomas Health System, Inc., Watsonville Hospital Corporation, Alpha Guardian, Trade Global/Jagged Peak, Sugarfina, Inc., and Carbonlite Holdings LLC.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Mr. Rubin has approximately 20 years of experience providing financial advisory, restructuring and turnaround services and has advised companies across a diverse range of industries. He has assisted clients both inside and outside of chapter 11 in addressing a variety of financial, accounting, operational, liquidity, and leverage issues. He has served as the CRO in recent bankruptcy cases, such as Reliant Life Shares, Contour Propco 1735 S. Mission LLC, Adelaida Cellars INC, Pacific Mortgage Exchange, Alpha Guardian, and MRRC Hold Co. He has further served as financial advisor in both in and out-of-court restructurings.

Mr. Rubin and the Force 10 Restructuring Advisor Personnel have analyzed and diligence the Property and believe there are multiple options for restructuring the Debtor's business through new investment, refinance, and sales. Force 10 is prepared to immediately explore the options available to the Debor for maintaining and increasing value for creditors and the estate and advise the Debtor accordingly.

## IV.   DISINTERESTEDNESS OF FORCE TEN

To the best of the Debtor's knowledge, information, and belief, and except to the extent disclosed herein and in the Rubin Declaration, Force Ten: (i) does not hold or represent an interest adverse to the Debtor's estate; and (ii) has no connection to the Debtor, its creditors, or other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed by the U.S. Trustee.

Although the Debtor submits that the retention of Force Ten is not governed by section 327(a) of the Bankruptcy Code, the Debtor attaches the Rubin Declaration, which discloses, among other things, any relationship that Force Ten has with the Debtor, significant creditors, or other significant parties in interest known to Force Ten. As set forth in the Rubin Declaration, the Debtor does not believe that Force Ten has any conflicts of interest or a material adverse interest to the Debtor.

From time to time, Force Ten has referred work to other professionals to be retained in this case. Likewise, certain such professionals have referred work to Force Ten. In addition, given the nature of Force Ten's practice, Force Ten may be adverse to such professionals in other cases.

In addition, as set forth in the Rubin Declaration, if any new material facts or relationships

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

are discovered or arise, Force Ten will provide the Court with a supplemental declaration.

## V.   <u>LEGAL AUTHORITY</u>

Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1).  Under applicable case law, courts will approve a debtor's proposed use of its assets under section 363(b)(1) of the Bankruptcy Code if it represents a sound business purpose on the part of the debtor.  *See, e.g., Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19–20 (B.A.P. 9th Cir. 1988); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification).

Bankruptcy courts have determined that the retention of corporate restructuring officers and advisors under section 363 of the Bankruptcy Code is an appropriate exercise of a debtor's business judgment.  *See e.g., In re Nine W. Holdings, Inc.*, 588 B.R. 678, 688, 691 (Bankr. S.D.N.Y. 2018); *In re Copenhaver, Inc.*, 506 B.R. 757, 764 (Bankr. C.D. Ill. 2014).

### A.   <u>The Retention and Employment of Force Ten is a Sound Exercise of the Debtor's Business Judgment.</u>

Force Ten's services are necessary and essential to the Debtor's restructuring efforts.  In addition to the specific knowledge that Mr. Rubin and the Restructuring Advisor Personnel have acquired about the Debtor's business, Mr. Rubin and the Restructuring Advisor Personnel also have extensive experience providing CRO and restructuring services.

In essence, the Debtor is seeking to employ Force Ten to advise and guide it through challenging times and lead the restructuring of the Debtor's business and the prosecution of this case.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

**B.      Retention of Force Ten is Critical to the Debtor's Success.**

FCB and Sparknest have filed motions for relief from stay. FCB has sought an order to excuse the Receiver's obligation to step down and turn over property to the Debtor, and Sparknest has sought an order to dismiss this Case. The Debtor has opposed all of this Case-terminating relief pursued by FCB and Sparknest, which are scheduled to be heard on Thursday June 12, 2025. The Debtor recognizes the urgency of the moment. It is one month into a single asset real estate case, hoping to regain control of its assets from the recently appointed Receiver. The Debtor has no time for distractions and disputes with senior creditors over fiduciary concerns.

The Debtor believes retaining Force 10 and Nicholas Rubin as CRO is in the best interests of the estate and all creditors. Mr. Rubin as CRO will allay any concerns FCB may have on removing the Receiver, and the Force 10 Restructuring Advisory Personnel are uniquely qualified to quickly put together a plan to maximize creditor return which may include take-out financing through a DIP or exit facility, a new value plan, a division of property to maximize the cash flow of operating units and development possibilities of unfinished construction, and joint marketing with the DLC2 parcel. Mr. Rubin can ensure the Debtor operates efficiently and assets are secure while this plethora of viable restructuring options are explored so Section 362(d)(3) requirements can be met.

Denying the relief requested herein would deprive the Debtor of the assistance of a highly qualified CRO and disadvantage the Debtor and all parties-in-interest. Accordingly, the Debtor respectfully submits that the services provided by Force 10 and Mr. Rubin are critical to the success of this case and requests that the Court approve the Retention Agreement.

**VI.      WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

## VII.   CONCLUSION

The Debtor respectfully requests that the Court enter the Proposed Order, granting the requested relief in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  July 9, 2025                                 **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By  */s/ Derrick Talerico*
      Derrick Talerico
Proposed Counsel to Dos Lagos Center 2, LLC,
Debtor and Debtor in Possession

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

## DECLARATION OF NICHOLAS RUBIN

I, Nicholas Rubin, declare as follows:

1.     I am a partner with Force Ten Partners, LLC ("**Force Ten**"), which is a financial advisory firm with its principal office located at 5271 California Avenue, Suite 270, Irvine, California, 92617.  Force Ten also has offices in the Los Angeles, Dallas, Las Vegas, and Miami metro areas.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Entry of an Order (I) Authorizing the Debtor to Retain Force Ten Partners, LLC to Provide Nicholas Rubin as Chief Restructuring Officer and Restructuring Advisor Personnel, as Necessary, Effective as of the Petition Date; (II) Approving the Retention Agreement; and (III) Granting Related Relief* (the "**Motion**").[3]

2.     Force Ten has extensive experience in providing CRO services and serving as a financial advisor to debtors, creditors, trustees, official creditors' committees, and others in a wide variety of bankruptcy matters, including acting as the CRO, independent director, or financial advisor in the bankruptcy proceedings of Rubio's Coastal Grill, BurgerFi International, Litigation Practice Group, Corner Bakery, Tuesday Morning Corporation, Thomas Health System, Inc., Watsonville Hospital Corporation, Alpha Guardian, Trade Global/Jagged Peak, Sugarfina, Inc., and Carbonlite Holdings LLC.

3.     I have approximately 20 years of experience providing financial advisory, restructuring and turnaround services and have advised companies across a diverse range of industries.  I have assisted clients both inside and outside of chapter 11 in addressing a variety of financial, accounting, operational, liquidity, and leverage issues.  I served as the CRO in recent bankruptcy cases, such as Reliant Life Shares, Contour Propco 1735 S. Mission LLC, Adelaida Cellars INC, Pacific Mortgage Exchange, Alpha Guardian, and MRRC Hold Co.  I have served as financial advisor in both in and out-of-court restructurings.

---

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**SERVICES**

5.      As set forth in the Motion, under the Retention Agreement, Force Ten has provided the Debtor with myself as the Debtor's CRO and the Restructuring Advisor Personnel to provide the services set forth in the Retention Agreement.  My and the Restructuring Advisor Personnel's duties are proposed to be those duties customarily performed by individuals holding similar executive positions.

6.      Consistent with the Retention Agreement, the responsibilities of the CRO and the Restructuring Advisor Personnel are proposed to be, without limitation:

Executive Services:

(a)      manage the Debtor's restructuring efforts;

(b)      manage the Debtor's efforts to reorganize their assets and liabilities for the benefit of their respective stakeholders, including, without limitation, authorizing the CRO to administer and carry out the Debtor's duties as a debtor-in-possession;

(c)      manage a sale process to sell the Company's assets under section 363 of the Bankruptcy Code, as applicable;

(d)      manage the Debtor's efforts to confirm a plan of reorganization or liquidation, as applicable, pursuant to the Bankruptcy Code.

Restructuring Services:

(a)      Managing the restructuring affairs of the Debtor, supervising the Debtor's professionals;

(b)      Assisting legal counsel and the Debtor's other professionals in executing the Debtor's restructuring efforts;

(c)      Assisting in connection with motions, responses, or other court activity as directed by legal counsel;

(d)      Evaluating and developing restructuring plans and other strategic alternatives for maximizing the value of the Debtor and its assets and recommending to the CEO and Board of Directors various plans and

-14-

strategic alternatives from time to time, and upon receipt of board approval of a proposed course of action, using commercially reasonable efforts to attempt to implement such course of action, subject to, as applicable, approval of any court of competent jurisdiction;

(e)     Assisting in negotiations with the Debtor's creditors and the Debtor's efforts to manage accounts payable and accounts receivable;

(f)     Preparing declarations, reports, depositions, and testimony; and

(g)     Represent the Debtor, as an authorized representative, in any and all bankruptcy court or related proceedings.

Additionally, the CRO expects to:

(a)     Participate in meetings and provide support to the Debtor and its professionals in responding to information requests, communicating with creditors, official committees of unsecured creditors (if one is appointed), the Office of the United States Trustee for the Central District of California (the "U.S. Trustee"), other parties in interest, and professionals hired by the same;

(b)     Advise the CEO of the development, negotiation, and implementation of restructuring initiatives and evaluation of strategic alternatives;

(c)     Prepare information and analysis necessary for the confirmation of a plan of reorganization, including information contained in the disclosure statement such as a liquidation analysis, if applicable;

(d)     Assist in implementing a chapter 11 plan of reorganization, if applicable;

(e)     Render testimony, as requested, about the matters regarding which Force Ten and its personnel are providing services; and

(f)     Provide such other restructuring or advisory services as are consistent with the role of the CRO and/or the above-described services, requested by the Debtor or counsel to the Debtor, that are not duplicative of services provided by other professionals, and as agreed by Force Ten.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-15-

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

7.     Force Ten will not accept employment in any other capacity in the case (i.e., financial advisor to the Debtor). Force Ten is not being engaged as a financial advisor and will not provide outside of the scope set forth herein and in the Retention Agreement.

8.     For a period of three years after the conclusion of the engagement, it will not make any investments in the debtor or reorganized debtor.

9.     The CRO shall provide periodic reports to the Board. The CRO shall act under the direction, control, and guidance of the Board and shall serve at the Board's pleasure. However, the CRO shall have broad discretion to implement or undertake, as the case may be, the Executive Services and Restructuring Services without the need to seek specific approval from the Board.

10.     No material modifications to the terms of Force Ten's engagement shall be effective without approval by the Bankruptcy Court.

## PROFESSIONAL COMPENSATION

11.     As set forth in the Retention Agreement, the hourly billing rates for restructuring professionals assigned to this engagement by Force Ten are as follows:

| 12. PROFESSIONAL | 13. RATE RANGE |
|---|---|
| CRO | $950 |
| Partners | $850 to $990 |
| Managing Directors | $595 to $795 |
| Directors | $425 to $595 |
| Analysts | $255 to $495 |

I have agreed to a discounted hourly rate of $850 for this engagement. Such rates shall be subject to Force Ten's customa1y annual adjustments.  Notice of any such adjustment shall be given to the Debtor reasonably in advance of its effectiveness.  Force Ten may add or substitute staff, in which case the staff will be billed at Force Ten's standard hourly rates.  In addition to compensation for services rendered by Force Ten's professionals, Force Ten will seek reimbursement for reasonable and necessary expenses incurred in connection with this case, including, but not limited

to travel, lodging, postage, telephone, document reproduction, computer charges, and database access fees. All fees and expenses will be billed on a monthly basis. [4]

14.     In addition to myself, I anticipate the following Force Ten professionals to work on this engagement:

**Michael VanderLey – Partner, Real Estate & Capital Markets**
Mike is responsible for overseeing the overall real estate strategy and capital markets initiatives for the project. He will lead efforts related to financing structures, capital deployment, and aligning the investment strategy with the broader restructuring framework. In coordination with the Chief Restructuring Officer (CRO), Mike ensures that capital decisions and real estate positioning are strategically integrated into the asset's recovery and monetization plan.

**Ryan Gatchalian – Director, Asset Management & Entitlements**
Ryan will manage all entitlement-related matters, asset oversight, and execution of value enhancement strategies. His focus will be on navigating the regulatory and development landscape, driving operational improvements, and maximizing the intrinsic and market value of the asset. Ryan's leadership in day-to-day execution will be critical to achieving targeted outcomes across entitlements, property operations, and value creation.

**Nicholas Rafatjoo – Analyst, Financial Reporting & Analysis**
Nico will support the project by managing all financial reporting and analytical functions. He will deliver detailed financial models, monitor performance metrics, and provide insight into trends and variances that influence strategic decisions. Nico's analysis will inform both internal reporting and external stakeholder communications, including lenders and investors.

9.     Other than as set forth herein or in the Retention Agreement, there is no proposed arrangement between the Debtor and Force Ten for compensation to be paid in this case.

**STAFFING REPORTS**

11.     Force Ten will file with the Court and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed (collectively, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month. These

---

[4] Despite meals being included as an allowable expense in the Retention Agreement, meals will not be an allowable expense.

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

Staffing Reports will include the names and tasks performed by all Restructuring Advisor Personnel involved in this matter.  Notice for the Staffing Reports will provide for a time period of fourteen (14) days for objections by parties in interest.  The Staffing Reports (and Force Ten's staffing for this matter) will be subject to review by the Court in the event so requested by any of the Notice Parties.

**INDEMNIFICATION**

12.    Notwithstanding the indemnification provision in the engagement agreement, Mr. Rubin and Force Ten will agree to limit the scope of the indemnification to that which is provided for in the Debtor's by-laws, which is appropriate given the nature of their services.  This is a material part of the inducement for Force Ten to enter into the Retention Agreement and provide the services thereunder, including supplying me to serve as the CRO. Despite anything in the Retention Agreement to the contrary, Force 10 agrees that should any of its personnel be in breach of or default under this Retention Agreement, the maximum liability of Force 10 and such personnel with respect to such breach or default shall not be limited to the fees actually paid to Force 10 pursuant to the Retention Agreement.

**NO DUPLICATION OF SERVICES**

13.    Force Ten shall use its reasonable, best efforts to ensure its services will complement, and not duplicate, the services rendered by any other professionals retained in this chapter 11 case.

**DISINTERESTEDNESS**

14.    It is my understanding that the elements of section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") are not necessary or relevant in connection with Force Ten's and my employment, which is being requested pursuant to section 363 of the Bankruptcy Code.  Nevertheless, in connection with the proposed employment and retention of Force Ten by the debtor, Force Ten undertook a conflicts analysis to determine whether it had any conflicts or other relationships and connections that might cause it to hold or represent an interest adverse to the Debtor.  Specifically, Force Ten reviewed its client

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

database and firm records.  To the best of my knowledge, information, and belief, Force Ten: (i) does not hold or represent an interest adverse to the Debtor's estate; and (ii) has no connection to the Debtor, its creditors, or other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee.

15.     As part of its diverse practice, Force Ten appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in this chapter 11 case. Further, Force Ten has in the past, and may in the future, be represented or employed by attorneys and law firms, some of whom may be involved in this chapter 11 case.  In addition, Force Ten has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtor or this chapter 11 case in which it works with other professionals involved in this case.  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the business relations constitute interests adverse to the debtor.

16.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor any of Force Ten's professional employees (a) have any connection with the Debtor, its creditors, the U.S. Trustee, any parties-in-interest in this chapter 11 case, or their respective attorneys or accountants, or (b) are related or connected to any United States Bankruptcy Judge for the Central District of California, the U.S. Trustee, or any employee of the U.S. Trustee, other than Force Ten's engagement by related debtor Dos Lagos Center 2, LLC.

17.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, Force Ten has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this chapter 11 case, other than Force Ten's engagement by related debtor Dos Lagos Center 2, LLC.  If the Debtor is authorized by the Court to employ and retain Force Ten, Force Ten will not accept any engagement or perform any service for any entity other than the Debtor in this chapter 11 case.  Force Ten will, however, continue to provide professional services to entities that may be creditors or equity security holders of the Debtor or parties-in-interest in this chapter 11 case, provided that such services do not relate to, or have any direct connection with, this chapter 11 case.

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

18. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, Force Ten:

    a. Is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services) or an equity holder of the Debtor;

    b. Is not and has not been, within two years before the date of the filing of the petition, a director, officer or an employee of the Debtor; and

    c. Does not have any interest materially adverse to the interests of the Debtor's estate, or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

19. No agreement currently exists to share with any other person or firm any compensation received by Force Ten for its services in this case, except in connection with the compensation of any employee. If any such agreement is entered into, Force Ten will undertake to amend and supplement this declaration to disclose the terms of any such agreement.

20. Force Ten occasionally refers work to the other professionals involved in this case and they occasionally refer work to Force Ten.

21. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, no promises have been received by Force Ten, or by any employee thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of July, 2025, at Irvine, California.

*ND Rubin*

Nicholas Rubin

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## <u>DECLARATION OF BO DON</u>

I, Bo Don, hereby declare as follows:

1. Pursuant to the attached Certificate of Resolutions, I am the authorized representative of Dos Lagos Center 2, LLC, the debtor and debtor-in-possession. I am also known as and go by the name "Bo Chen." I have personal knowledge of the facts stated herein and knowledge based on the business records of the Debtor.

2. Lang (Anthony) Zhang is the 70% majority owner and Managing Member of DLC2. My husband, Richard Don, is the 30% minority owner of DLC2, which interest is a community asset of our marriage.

3. I believe retaining Force 10 and Nicholas Rubin as CRO is in the best interests of the estate and all creditors. I believe the Force 10 Restructuring Advisory Personnel are uniquely qualified to quickly put together a plan to maximize creditor return which may include take-out financing through a DIP or exit facility, a new value plan, pursuit of development possibilities, and potential joint marketing with the Fu Bang Group Corp, USA property. Mr. Rubin can ensure the Debtor operates efficiently and assets are secure while this plethora of viable restructuring options are explored so Section 362(d)(3) requirements can be met.

4. My native language is Chinese (Mandarin). I do not read or speak English. This declaration was prepared in the first instance by Fu Bang's counsel. This declaration has been translated into Chinese (Mandarin) for me and I understand its statements and contents and adopt them as my own.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9th day of July, 2025, at <u>Roland Heights</u>, California.



Bo Don

MOTION TO RETAIN FORCE 10 PARTNERS AND CRO

# EXHIBIT 1

EXHIBIT 1 - Page 22



5271 California, Suite 270
Irvine, California 92617
Force10partners.com
(949) 357-2360

June 8, 2025

Dos Lagos Center 2, LLC
4261 Odyssey Dr, Unit 117
Corona, CA 92883

Attn: Bo Don (Authorized Representative)

Re: Dos Lagos Center 2, LLC, and Force Ten Partners, LLC — Engagement Agreement

Dear Ms. Don,

We appreciate the opportunity to work with Dos Lagos Center 2, LLC ("Company"). This Engagement Agreement ("Agreement") confirms and sets forth the terms and conditions of the engagement between the Company and Force Ten Partners, LLC ("Force 10") regarding the scope of the services to be performed by Force 10 (the "Engagement") and the basis of compensation for those services. Ms. Don, as Authorized Representative of the Company, is authorized by the Company's Board of Directors[1] to enter into this Agreement.

1.      Description of Services.

        (a)      Executive Services – Chief Restructuring Officer. During the term of this Engagement, Force 10 shall provide Nicholas Rubin to the Company to serve as chief restructuring officer ("CRO") for the Company. If Nicholas Rubin is unable to serve as CRO, Force 10 and the Company will work collaboratively to select a replacement CRO. The CRO will: (i) manage the Company's restructuring efforts,; (ii) manage the Company's efforts to reorganize their assets and liabilities for the benefit of their respective stakeholders, including, without limitation, authorizing the CRO to administer and carry out the Company's duties as a debtor-in-possession; (iii) manage a sale process to sell the Company's assets under section 363 of the Bankruptcy Code, as applicable; and (iv) manage the Company's efforts to confirm a plan of reorganization or liquidation, as applicable, pursuant to the Bankruptcy Code.

        (b)      Restructuring Services. Nicholas Rubin, as CRO, and Force 10, in aid of the CRO, will provide the following services, as appropriate:

(i)      Manage the affairs of the Company and supervise the Company's professionals;

(ii)      Assist legal counsel and the Company's other professionals in executing the Company's restructuring efforts;

---

[1] The Company's 'Board of Directors currently consists of one member: Ms. Bo Don.

EXHIBIT 1 - Page 23

(iii)    Supervise the engagement of the Company's investment banker or broker, if any;

(iv)    Seek to maximize the value of the Company's assets and operations through, one or more of the following: seeking financing, seeking the sale of the Company or its assets, seeking to refinance existing indebtedness, seeking a recapitalization, seeking a restructuring or reorganizing of the Company's businesses, in whole or in part (individually and collectively "Transaction");

(v)    Assist in connection with motions, responses, or other court activity as directed by legal counsel;

(vi)    Prepare periodic reporting to stakeholders, the Bankruptcy Court, and the Office of the United States Trustee;

(vii)    Prepare or supervise the preparation of cash budgets, Monthly Operating Reports, variance reports, schedules of assets and liabilities, statements of financial affairs, and any other necessary financial analysis or reporting;

(viii)    Evaluate and develop restructuring plans and other strategic alternatives for maximizing the value of the Company and their assets. The CRO, in coordination with the Company's other professionals, shall recommend to the Board various plans and strategic alternatives from time to time, and upon receipt of Board approval of a proposed course of action, the CRO shall use commercially reasonable efforts to attempt to implement such course of action, subject, as applicable, approval of any court of competent jurisdiction;

(ix)    Assist in the formulation and preparation of the Company's disclosure statement and plan of reorganization, if applicable, including working with the Company's professionals and advisors in the creation of financial projections and supporting methodology, key assumptions and rationale, appropriate financial analysis, evaluation of the Company's operations, supporting financial statements, and proforma budgets and projections;

(x)    Assist in negotiations with the Company's creditors and in developing the response to any objections from parties in interest to the bankruptcy plan or other courses of action undertaken by the Companies;

(xi)    Preparing and offering declarations, reports, depositions, and testimony; and

(xii)    Represent the Company, as an authorized representative, in any and all bankruptcy court or related proceedings.

(c)    Additional Personnel. To address and handle the Restructuring Services as specified above, the CRO may utilize, through Force 10, additional personnel with appropriate professional experience.

(d)    Reporting and Authority. The CRO shall provide periodic reports to the Board. The CRO shall act under the direction, control, and guidance of the Board and shall serve at the Board's pleasure. However, the CRO shall have broad discretion to implement or undertake, as the case may be, the Executive Services and Restructuring Services without the need to seek specific approval from the Board.

(e)    Force 10 Personnel. The CRO will continue to be either a member, employee, or otherwise engaged by Force 10 while rendering services to the Companies. The CRO and Force 10 will continue to work on unrelated matters, which will not unduly interfere with services rendered under this Engagement.

(f)    Reliance. The Company shall use commercially reasonable efforts to: (i) provide the CRO and Force 10 and its personnel with access to management and other representatives of the Companies; and (ii) to furnish all data, material, and other information

EXHIBIT 1 - Page 24

concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that such personnel reasonably request in connection with the services to be provided under this Engagement. The CRO, Force 10, and its personnel may rely, without further independent verification, on the accuracy and completeness of all information that is furnished by or on behalf of a Company or otherwise reviewed by such personnel in connection with the services to be provided under this Engagement. The Company acknowledges and agrees that the CRO and Force 10 and its personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. The CRO and Force 10 and its personnel are not obligated to update data submitted to them.

(g)      Projections. You understand that the services to be rendered by the CRO and Force 10 and its personnel may include the preparation of projections and other forward-looking statements and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. Also, you understand that the CRO and Force 10 and its personnel will be relying on information provided by the Company, its management, employees, and other professionals, in preparation of those projections and other forward-looking statements.

(h)      Limitations of Duties.

(i)      Neither the CRO nor Force 10 nor any of its personnel make any representations or guarantees that the goals of this Engagement will be achieved, that a Transaction will be realized, or that any plan or strategic alternative recommended or implemented by the CRO and Force 10 or any of its personnel will be more successful than any other possible proposals or strategic alternatives.

(ii)      Neither the CRO nor Force 10 shall be deemed to be the employer (or co-employer with any Company) of any of the Company's employees.  The Company's employees shall at all times be and remain exclusively employees of the Company that employs it.

(iii)      Neither the CRO nor Force 10 nor any of its personnel assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any Transaction. Force 10 and its personnel shall only be responsible for implementing the proposals approved by the Board and only to the extent and in the manner authorized by and directed by the Board.

(i)      Modifications. This Engagement is fluid, and the specific scope of services may change. In the event circumstances arise and the scope of requested services expands, Force 10 and the Board will consult with respect to amendments and modifications to this Engagement.

2.      Compensation. In consideration of Force 10's acceptance of this Engagement, the Company agrees:

(a)      Hourly Fees. To pay Force 10 for the hourly rate of its personnel engaged in providing services pursuant to the Engagement.  The initial hourly rates agreed to for the Engagement are:

| | |
|---|---|
| Partners | $850-$990 |
| Managing Directors | $595-$795 |
| Directors | $495-$595 |
| Analysts | $255-$495 |

EXHIBIT 1 - Page 25

Force 10 generally adjusts its hourly rates on an annual basis and the above rates reflect the current rates for the calendar year 2025.  The CRO's hourly fee is $850.00.

(b)　　Expenses. The Company shall reimburse the CRO and Force 10 for their reasonable and documented out-of-pocket expenses incurred in connection with the Engagement, including travel, lodging, duplicating, computer research, data storage, messenger services, and telephone charges.

(c)　　Payment Terms. All invoices reflecting Force 10's hourly fees and expenses will be submitted in accordance with the Office of the U.S. Trustee guidelines and will be paid pursuant to the court order, if any, authorizing Force 10's retention.

(d)　　Reasonableness of Fees. The Company acknowledges that a substantial professional commitment of time and effort will be required by Force 10 and its personnel pursuant to this Engagement, and that such commitment may foreclose other opportunities for the firm and its personnel. Moreover, the actual time and commitment required for the Restructuring Services under this Engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Force 10's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Force 10 that will be required in this Engagement, and the market rate for Force 10's services of this nature, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Force 10, and provides the requisite certainty to the Company.

2.　　Term.

(a)　　The term of this Engagement shall commence as of the date set forth above and shall continue until the Engagement is completed unless terminated with or without cause by either the Company or Force 10 on fifteen (15) days prior written notice, in which event all compensation and expenses owing to Force 10 through the date of such termination (including fees and expenses incurred prior to but invoiced after such termination) shall be immediately due and payable. All provisions of this Agreement setting forth rights or obligations that extend beyond the termination of the Agreement shall survive and shall continue to bind the parties.

(b)　　Force 10 may withdraw from this Engagement and terminate its obligations hereunder and the CRO and any other officers and/or managers of the Company may resign from their respective positions upon written notice to the Board if the Company makes it unethical or unreasonably difficult for Force 10 or its personnel to fulfill the terms of this Engagement or otherwise perform their duties under this Engagement.

3.　　No Audit. Force 10 and its personnel are not being requested to perform and are not agreeing to undertake an accounting audit, review, or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, the Securities Exchange Commission, or any other state or national professional or regulatory body.

4.　　No Third-Party Beneficiary. The Company acknowledges that all advice and work product given by Force 10 or any of its personnel in connection with this Engagement is intended solely for the benefit and use of the Company, including its management and Board, in their capacities as such, in considering the matters to which this Engagement relates. Without Force 10's specific case-by-case written approval, the Company agrees that the advice and any work product shall not be used for any other purpose and that they shall not be reproduced, disseminated, quoted or referred to other than for the exclusive purpose of accomplishing the tasks that are the subject

**EXHIBIT 1 - Page 26**

matter of this Engagement during the term of this Engagement, except as otherwise required by law.

5.    Conflicts.

(a)    The CRO and Force 10 are not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because the CRO is a financial consultant and independent fiduciary and Force 10 is a financial advisory and consulting firm that serves clients in numerous cases and industries, both in and out of court, it is possible that the CRO and/or Force 10 may have rendered services to or have business associations with other entities or people which had or have or may have relationships with any of the Companies, including creditors of the Companies. The CRO and Force 10 will not represent the interests of any such entities or people in connection with this matter.

6.    Confidentiality. Force 10 and its personnel shall keep confidential all non-public information received from the Company in conjunction with this Engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this Engagement. All confidentiality obligations shall cease as to any part of such information that is or becomes public other than as a result of a breach of this provision.

7.    Indemnification and Limitations on Liability.

(a)    The Company shall indemnify and hold harmless the CRO to the greatest extent provided in their respective organizational documents for indemnifying any other officer of the Company.  Furthermore, the Company shall indemnify and hold harmless Force 10 and each of its personnel, including the CRO, together with its officers, members, partners, directors, employees and agents (each an "Indemnified Party"), from and against any losses, claims, damages and liabilities, joint or several (collectively, the "Damages"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any services contemplated by this Engagement or performance of services by an Indemnified Party thereunder, including any liability to or on account of any employees of any Company, and will reimburse each Indemnified Party for all fees and reasonable and documented out-of-pocket expenses (including the fees and reasonable and documented out-of-pocket expenses of counsel) (collectively, "Expenses") as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, "Proceedings") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; provided, however, that you will not be liable to any specific Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of such specific Indemnified Party seeking indemnification hereunder. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of Company's arising out of or in connection with any services contemplated by this Engagement or the performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of the Indemnified Party.

(b)    If for any reason other than in accordance with this Engagement, the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified

EXHIBIT 1 - Page 27

Party harmless, the Company agrees to contribute to the amount paid or payable by an Indemnified Party as a result of such Damages (including all Expenses incurred) in such proportion as is appropriate to reflect the relative benefits to the Company's and/or its stakeholders or beneficiaries on the one hand, and Force 10 on the other hand, in connection with the matters covered by this Engagement and this Section 7 or, if the foregoing allocation is not permitted by applicable law, not only such relative benefits but also the relative faults of such parties as well as any relevant equitable considerations. The Company agrees that for purposes of this paragraph the relative benefits to the Company's and/or its stakeholders or beneficiaries and Force 10 in connection with the matters covered by this Engagement and this Section 8 will be deemed to be in the same proportion that the total value paid or received or to be paid or received by Company's and/or its stakeholders or beneficiaries in connection with the Damages, bears to the fees paid to Force 10 under the Engagement; provided, however, that (a) in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by Force 10 under this Engagement (excluding any amounts received by Force 10 as reimbursement of expenses) and (b) the Company shall have no obligation to make any contribution to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the applicable Indemnified Party.

(c)     The Company shall not enter into any waiver, release or settlement of any Proceeding (whether or not Force 10 or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of Force 10 (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an unconditional release of Force 10 and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

(d)     If any Indemnified Party is entitled to indemnification under this Agreement with respect to any action or proceeding brought by a third party, the Company shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Party.  Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Party in connection with the defense thereof unless (i) the Company has agreed to pay such fees and expenses, (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner, or (iii) the Indemnified Party shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Party, including situations in which there are one or more legal defenses available to the Indemnified Party that are different from or additional to those available to the Companies; provided, however, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, except to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding.

(e)     The CRO and any other officers or managers provided by Force 10 pursuant to this Engagement shall be insured as officers of the Company under the Company's director and officer liability insurance policies. The Company shall maintain director and officer liability insurance purchased by the Company and shall maintain such insurance and purchase

**EXHIBIT 1 - Page 28**

an appropriate tail if the policies are to expire and not be replaced by substantially similar or better policies for the period through which claims can be made against such persons.

(f)    The provisions of this Section 7 are contractual obligations, and no change in applicable law or any of the Company's organizational documents, bylaws or any other agreement or undertaking or insurance policy shall affect the CRO's, Force 10's or any of Force 10's personnel's rights under this Section.

8.    Joint and Several Liability. [RESERVED]

9.    Limitations on Force 10's Liabilities. If Force 10 or any of its personnel are otherwise in breach of or default under this Engagement, then the maximum liability of Force 10 and such personnel with respect to such breach or default shall be limited to an amount equal to the aggregate of all fees actually paid to Force 10 pursuant to this Engagement as of such date.

10.    Successors and Assigns. This Engagement shall inure to the benefit of, and be binding upon, the Company and Force 10 and their respective successors and assigns. Neither party may assign its rights and/or obligations under this Engagement without the written consent of the other party, which consent shall not be unreasonably withheld or delayed.

11.    Applicable Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without reference to principles of conflicts of law. Any action arising from or related in any way to this Engagement shall be brought only in the court overseeing the Company's Chapter 11 cases.

12.    Independent Contractor. Force 10 and its personnel serve as independent contractors to the Company pursuant to the terms of this Engagement. This Engagement does not create and shall not be construed to create a relationship of principal and agent, joint venture, co-partners, employer and employee or any similar relationship and the parties hereto expressly deny the existence of any such relationship.

13.    Miscellaneous. No amendment of this Engagement or waiver of any provision hereof will be binding unless set forth in a writing signed by the Company and Force 10. No failure or delay by a party in exercising any right, power or privilege hereunder will operate as waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege hereunder. The invalidity or unenforceability of any provision of this letter agreement will not affect the validity or enforceability of any other provision of this letter agreement, each of which will remain in full force and effect. This Engagement may be executed in counterparts, each of which will be deemed to be an original, and all of which will constitute one and the same instrument. Signatures delivered electronically will have the same force and effect as original signatures.

If this Engagement is acceptable to you, please execute and return it to acknowledge your agreement to its terms.

**EXHIBIT 1 - Page 29**

**Force Ten Partners, LLC**
a Delaware limited liability company

By:  _N̶D̶ Rubin_____

Name: Nicholas Rubin
Its:      Member


**COMPANY:**


By:  _____

Name: Bo Don
Its:      Authorized Representative

**EXHIBIT 1 - Page 30**

# EXHIBIT 2

EXHIBIT 2 - Page 31

Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
David B. Zolkin (State Bar No. 155410
dzolkin@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

[Proposed] General Bankruptcy Counsel to
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

<div style="float:left; writing-mode: vertical">WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025</div>

In re:

DOS LAGOS CENTER 2, LLC,

          Debtor and Debtor in
Possession.

Case No. 6:25-bk-13642-SY

Chapter 11

**[PROPOSED] ORDER GRANTING MOTION OF CHAPTER 11 DEBTOR AND DEBTOR IN POSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO RETAIN FORCE TEN PARTNERS, LLC TO PROVIDE NICHOLAS RUBIN AS CHIEF RESTRUCTURING OFFICER AND RESTRUCTURING ADVISOR PERSONNEL, AS NECESSARY, EFFECTIVE AS OF THE PETITION DATE; (II) APPROVING THE RETENTION AGREEMENT; AND (III) GRANTING RELATED RELIEF**

[No Hearing Required]

On July 10, 2025, Dos Lagos Center 2, LLC ("Debtor"), the debtor and debtor-in-possession in the pending chapter 11 bankruptcy case herein (the "Bankruptcy Case"), filed a Motion (the "Motion") with the United States Bankruptcy Court, Central District of California, Riverside

-1-

Division, for an order authorizing the retention of Force Ten Partners, LLC ("Force 10") [Dkt. ###] to provide Nicholas Rubin as Chief Restructuring Officer as of May 30, 2025.

The Court, having considered the Motion, the documents in support thereof, having determined that Notice of the Motion was proper, and based thereon,

**IT IS HEREBY ORDERED,**

1.    The Motion is granted in its entirety.

2.    The Debtor is authorized to retain Force 10 on the terms and conditions set forth in the Motion and retention agreement, effective as of the Petition Date, with compensation as set forth in the Motion.

<div align="center">###</div>

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-2-
ORDER GRANTING MOTION TO RETAIN FORCE TEN PARTNERS, LLC

EXHIBIT 2 - Page 33

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
     11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO RETAIN FORCE TEN PARTNERS, LLC TO PROVIDE NICHOLAS RUBIN AS CHIEF RESTRUCTURING OFFICER AND RESTRUCTURING ADVISOR PERSONNEL, AS NECESSARY, EFFECTIVE AS OF THE PETITION DATE; (II) APPROVING THE RETENTION AGREEMENT; AND (III) GRANTING RELATED RELIEF; DECLARATIONS OF NICHOLAS RUBIN AND BO DON IN SUPPORT THEREOF,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 10, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF service list

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 10, 2025 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                   **F 9013-3.1.PROOF.SERVICE**

In re Dos Lagos Center 2, LLC                                      Case No. 6:25-bk-13642-SY

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Debtor Dos Lagos Center 2, LLC</u>: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- <u>Courtesy NEF/Interested Party</u> **David B Golubchik**: dbg@lnbyg.com
- <u>Courtesy NEF/Interested Party</u> **Rika Kido**: rkido@shulmanbastian.com; avernon@shulmanbastian.com
- <u>Attorneys for Creditor First Credit Bank</u>: **Dennette A Mulvaney**: dmulvaney@leechtishman.com; lmoya@leechtishman.com; narango@leechtishman.com; dbender@leechtishman.com
- <u>Attorneys for Creditor Na Jiang</u>: **Jeffrey S Shinbrot**: jeffrey@shinbrotfirm.com; sandra@shinbrotfirm.com; tanya@shinbrotfirm.com
- <u>US Trustee's Office (RS)</u>: ustpregion16.rs.ecf@usdoj.gov; **Abram Feuerstein, Everett L Green, Ali Matin**: abram.s.feuerstein@usdoj.gov; everett.l.green@usdoj.gov; ali.matin@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**